IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

OLD DOMINION UNIV. RESEARCH FOUND.,

    **Plaintiff-
    Counterclaim Defendant,**

v.                                                  Civil Action No. 2:14cv305

AQUA TERRA INT'L, LLC,

    **Defendant-
    Counterclaim Plaintiff.**

## OPINION AND ORDER

This matter came before the Court on Plaintiff-Counterclaim Defendant Old Dominion University Research Foundation's ("ODURF") Motion to Strike Defendant-Counterclaim Plaintiff Aqua Terra International LLC's ("Aqua Terra") Answer, Doc. 8, and Motion to Dismiss the Counterclaim, or in the alternative, Motion for a More Definite Statement, Doc. 10. A hearing was held on October 27, 2014. Ruling from the bench, the Court **DENIED** the Motion to Dismiss, **GRANTED** the Motion for a More Definite Statement, and **GRANTED** the Motion to Strike in Part. The Court now issues this Opinion and Order explaining its reasoning.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**a. Factual Background[1]**

This dispute arises out of a soured contractual relationship. Aqua Terra alleges that ODURF made fraudulent statements to induce Aqua Terra to enter into an Exclusive License Agreement and Services Agreement ("the Agreements"). Aqua Terra alleges that ODURF made

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the [non-moving party]." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court cautions, however, that the facts alleged by the parties are recited here for the limited purpose of deciding the instant Motions. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

1

false representations concerning its ability to produce valuable "Specialty Chemicals." Countercl. ¶ 7. ODURF's representations included, <u>inter alia</u>, that:

  (a) it had "establish[ed] beyond reasonable doubt that [its production facility] is an effective system to convert vegetable oils ... to biodiesel and high-value chemicals";
  (b) it could produce in excess of 3,000 gallons of the Specialty Chemicals during an 18-month period;
  (c) these Specialty Chemicals were worth "$1,000 per gallon or more"; and
  (d) the "process is what generates $8 million dollars annually. We can scale that up by 100X by building a much larger [plant]..."

<u>Id.</u> ¶ 8. Aqua Terra alleges that these fraudulent misrepresentations and omission of critical facts induced it to enter into the Agreements. <u>Id.</u> ¶ 12. Aqua Terra alleges that ODURF knew that it had not developed the necessary technology to perform its obligations under the Agreements. <u>Id.</u> ¶ 13.

Aqua Terra alleges that ODURF held out Dr. Patrick Hatcher, an Old Dominion University ("ODU") professor as its agent with actual and/or apparent authority to discuss the disputed technology and negotiate the Agreements. <u>Id.</u> ¶ 20. Aqua Terra alleges that ODURF was seeking capital to fund Dr. Hatcher's research and continued experimentation, but was holding the technology out as ready for commercialization when it was not. <u>Id.</u> ¶ 27.

ShellTek International ("ShellTek"), a corporation which would later become a member of Aqua Terra, began meeting with Dr. Hatcher and ODURF in June 2012. <u>Id.</u> ¶ 32. ODURF made representations concerning the status of the technology, and the readiness of the technology to be used to prepare a commercialized product; however, the Counterclaim does not contain when and who specifically made these statements. <u>Id.</u> ¶¶ 33–41. However, the Counterclaim does contain allegations that Dr. Hatcher made numerous statements concerning the status of the technology, and included copies of these e-mails with the Counterclaim. <u>Id.</u> ¶ 42, Exs. 1–11. Additionally, Aqua Terra alleges that the representations that ODURF made in

the Services Agreement were false, because ODURF "had not developed the Technology to create the Specialty Chemicals ... or that the process was not ready for commercialization as [ODURF] had falsely represented." Id. ¶ 45. In August and September 2012, Dr. Hatcher also provided Aqua Terra with financial information estimating the potential value and profitability of the project, and informed Aqua Terra that he had run out of funding for the project. Id. ¶ 53.

Once production began, Aqua Terra discovered "that the system did not work as promised, the Technology did not exist, and that the Production Facility was incapable of producing the Specialty Chemicals." Id. ¶ 57. When Aqua Terra attempted to follow up on the deficiencies, it did not receive satisfactory responses from ODURF. Id. ¶¶ 58–61. Aqua Terra alleges that ODURF knew that it could not produce the Specialty Chemicals, the facility could not operate on the production schedule outlined in the Services Agreement, and ODURF withheld a 115 page report indicating that there were production difficulties prior to entering into the Agreements. Id. ¶¶ 63–66. As a result, Aqua Terra alleges that it has suffered damages in excess of $3,392,000. Id. ¶ 75.

**b.    Procedural Background**

ODURF filed its Complaint in the Circuit Court for the City of Norfolk on May 19, 2014. Compl. Aqua Terra filed its Notice of Removal to this Court on June 24, 2014. Doc. 1. Aqua Terra filed its Answer and Counterclaim on July 14, 2014. Docs. 5–6. ODURF filed the instant Motions on August 7, 2014. Docs. 8–10. Aqua Terra filed its oppositions to the Motions on August 21, 2014. Docs. 15–16. ODURF filed its reply briefs on August 27, 2014. Docs. 17–18.

## II.    LEGAL STANDARDS

**a.    Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; "it does not

resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In deciding the motion, a court may consider the facts alleged on the face of the complaint, as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the Complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

**b.     Motion for a More Definite Statement**

"A motion for a more definite statement under Federal Rule of Civil Procedure 12(e) is not favored." Flaum v. Gloucester Lanes, Inc., 299 F.R.D. 120, 122 (E.D. Va. 2014). Such a motion is not a substitute for the discovery process and a motion for more definite statement is "'designed to strike at unintelligibility rather than simple want of detail.'" Frederick v. Koziol, 727 F. Supp. 1019, 1020–21 (E.D. Va. 1990) (quoting Scarbrough v. R-Way Furniture Co., 105 F.R.D. 90, 91 (E.D. Wis. 1985)). Thus, it will only be granted if the complaint is so vague and

ambiguous that the defendant cannot frame a responsive pleading. Hodgson v. Virginia Baptist Hosp., Inc., 482 F.2d 821, 824 (4th Cir. 1973). A complaint does not need to "make a case" against a defendant or "forecast evidence sufficient to prove an element," rather, the sufficiency of a complaint depends on "whether the document's allegations are detailed and informative enough to enable the defendant to respond." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (internal quotation marks and citations omitted).

### c. Motion to Strike

"Whether to grant a motion to strike under Rule 12(f) is within the sound discretion of the district court." Grant v. Bank of America, N.A., No. 2:13cv342, 2014 WL 792119, at *2 (E.D. Va. Feb. 25, 2014) (internal quotation marks and citation omitted). "To grant a Rule 12(f) motion, the court must determine that the challenged allegations are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." Grant, 2014 WL 792119, at *2 (internal quotation marks and citation omitted). "A plaintiff may demonstrate prejudice if the answer unclearly articulates to which claims the affirmative defenses apply." Francisco v. Verizon South, Inc., No. 3:09cv737, 2010 WL 2990159, at *5 (E.D. Va. July 29, 2010). When granted, the Court should generally grant leave to amend the stricken pleading. Grant, 2014 WL 792119, at *3.

### III. ANALYSIS

#### a. Motion to Dismiss

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." The "circumstances" identified in Rule 9(b) "are the time, place, and contents of the false representations, as well as the identity of

the person making the misrepresentation and what he obtained thereby." Baker v. Elam, 883 F. Supp. 2d 576, 580 (E.D. Va. 2012) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)) (internal quotation marks omitted). Failure to comply with the Rule 9(b) standard is treated as a failure to state a claim under Rule 12(b)(6). Beasley v. FV-I, Inc., No. 1:13cv116, 2013 WL 1192018, at *3 (E.D. Va. Mar. 21, 2013).

In Virginia, to prove a claim of actual fraud, a party "must prove by clear and convincing evidence '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" Hitachi Credit America Corp. v. Signet Bank, 166 F.3d 614, 628 (4th Cir. 1999) (quoting Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (Va. 1994)). An action for constructive fraud occurs when "the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently; the plaintiff must still prove the other elements of actual fraud—reliance and detriment—by clear and convincing evidence." Hitachi, 166 F.3d at 628 (citing Alequin, 439 S.E.2d at 390). Under the doctrine of apparent authority, a principal is bound by the frauds of his agent, to the extent he holds out another as having the authority to act for him. Kern v. J.L. Barksdale Furniture Corp., 299 S.E.2d 365, 367 (Va. 1983).

Taking Aqua Terra's allegations as true, the facts alleged in the Counterclaim concerning the Scope of Work in the Services Agreement suffice to establish a valid fraud claim. Aqua Terra alleges that ODURF could not perform its obligations under the Services Agreement and that it knew that it had not developed the technology to enable the production of Specialty Chemicals. Countercl. ¶ 45. Aqua Terra alleges that ODURF knew that Aqua Terra was interested in a commercialized product, and not simply in financing a research project. Id. ¶ 42(k). Aqua Terra has alleged that it relied on ODURF's representations as it was

communicating with third parties interested in the Specialty Chemicals, and that it was damaged by expending a large amount of time and resources in the project. Id. ¶¶ 42; 75. Moreover, Aqua Terra has pled sufficient facts, which if true, could establish the apparent authority of Dr. Hatcher in making these representations.

Accordingly, there are enough allegations in the Counterclaim to establish a plausible fraud claim, and thus the Court **DENIED** the Motion to Dismiss.

**b.     Motion for a More Definite Statement**

ODURF argued that even if the Counterclaim sets forth a cause of action under Twombly and Iqbal, its shotgun allegations make it impossible for it to frame a responsive pleading, and thus a more definite statement is warranted.

While it is unusual for a claim to survive a Rule 12(b)(6) motion, and yet fail to satisfy the standards set forth under Rule 12(e), a pleading that meets the liberal pleading standards may still be overly vague. See RG Steel Wheeling, LLC v. Health Plan of the Upper Ohio Valley, Inc., No. 5:13cv7, 2014 WL 3845215, at *9 (N.D.W. Va. Aug. 5, 2014) (citing 5B Wright & Miller, Federal Practice and Procedure § 1356)).

In this case, while the Counterclaim states a cause of action for fraud, many of the allegations lack sufficient detail so as to allow ODURF to frame a responsive pleading. ODURF pointed to numerous allegations in the Counterclaim where Aqua Terra does not provide the date of the statement, or the identity and position of the person making the statement. Doc. 18-1; see also Countercl. ¶¶ 18, 40, 47–48. ODURF is not seeking discovery, but rather information required by Rule 9(b). Thus, the Court **GRANTED** the alternative Motion for a More Definite Statement.

7

**c.     Motion to Strike**

ODURF also moved to strike Aqua Terra's Answer as being insufficient. In its Answer, Aqua Terra lists the affirmative defenses of fraud and counterclaim. Doc. 5 at 4–5. However, the Answer does not contain any facts to support the assertion of fraud. Id.

In Grant, this Court held that the plausibility standard set forth in Twombly and Iqbal does not apply to affirmative defenses. Grant, 2014 WL 792119, at *3–4. The Court's reasoning was that under Rule 8(a), the plaintiff must show that it is entitled to relief, while under Rules 8(b) and 8(c), a defendant is not required to show that it is entitled to a defense. Id. at *4.

However, unlike in Rule 8(a), the language in Rule 9(b), requiring fraud to be stated with particularity, more closely tracks the language found in Rules 8(b) and 8(c). Rule 8(b) requires a statement "in short and plain terms" of a party's defenses. Rule 9(b) does not refer to the pleader as does Rule 8(a); instead it refers to "a party." Rule 8(c) states that "a party" must set forth an affirmative defense such as fraud in its pleading. Rule 9(b) does not distinguish between a plaintiff and a defendant. Courts to consider this issue have found that a party setting forth an affirmative defense of fraud or mistake must meet the heightened standards of Rule 9(b). See, e.g., Strauss v. Centennial Precious Metals, Inc., 291 F.R.D. 338, 340–41 (D. Ne. 2013). Furthermore, the Strauss court reached the same conclusion as this Court in Grant by not applying the Twombly and Iqbal plausibility standard to affirmative defenses. Id. at 342. Thus, the Court held that a defendant pleading an affirmative defense of fraud must meet the particularity standard set forth in Rule 9(b).

Here, Aqua Terra's Answer fails to set forth an affirmative defense of fraud with specificity. Additionally, while the Answer incorporated the Counterclaim, it does not state what part of the Counterclaim is incorporated. Moreover, because the Counterclaim is insufficient

8

under Rule 12(e), Aqua Terra's attempt to incorporate it into its Answer is insufficient. Thus, the Court **GRANTED** the Motion to Strike in Part.[2]

## IV. CONCLUSION

The Court **DENIED** the Motion to Dismiss, but **GRANTED** the Motion for a More Definite Statement, Doc. 10, and **GRANTED** the Motion to Strike in Part, Doc. 8.

The Court **ORDERED** that Aqua Terra file an Amended Complaint containing the more definite statement and file its Amended Answer by November 7, 2014. Plaintiff then will have eleven (11) days thereafter to file its responsive pleadings.

The Clerk is **REQUESTED** to deliver a copy of this Order to all counsel of record

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
~~October~~ Nov 5, 2014

---

[2] The Court declined to strike the Answer in its entirety, striking only the affirmative defenses of fraud and counterclaim from the Answer.